**Verdova G. BISHOP, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT SER-
VICES, Respondent.**

No. 10–AA–250.

District of Columbia Court of Appeals.

Argued June 28, 2011.

Decided July 14, 2011.

Verdova G. Bishop, pro se.

Michael A. Milwee, Senior Assistant Attorney General, with whom Peter J. Nickles, Attorney General for the District of Columbia at the time, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for respondent.

Before GLICKMAN and FISHER, Associate Judges, and SCHWELB, Senior Judge.

FISHER, Associate Judge:

Petitioner Verdova Bishop asks us to reverse a final order of the District of Columbia Office of Administrative Hearings ("OAH") finding him ineligible for extended unemployment compensation benefits. We affirm.

**I.**

Following his separation from the District of Columbia government, Verdova Bishop filed a claim for unemployment compensation benefits. Although his total base period wages did not exceed his highest quarter wages by 1½ times,[1] *see* D.C.Code § 51–107(c)(1)(C), Mr. Bishop was nevertheless deemed eligible for "regular" benefits under the "setback" or "stepback" provision in D.C.Code § 51–107(c)(2), which permits DOES to disregard any high-quarter wages that exceed

---

1. The claim showed that Mr. Bishop earned base period wages of $6,634.62 in the third calendar quarter of 2008 and $30,961.56 in the fourth calendar quarter of 2008. He did not earn any wages in the first and second calendar quarters of 2008.

those required to receive the maximum benefit.[2]

After exhausting his regular benefits, Mr. Bishop sought Emergency Unemployment Compensation ("EUC"). A Claims Examiner denied the EUC claim because Mr. Bishop's total base period wages did not exceed the wages in his highest quarter by 1½ times, as required by D.C.Code § 51–107(g)(3)(C). An OAH Administrative Law Judge ("ALJ") initially reversed DOES, applying the "setback" provision from D.C.Code § 51–107(c)(2) (which applies to "regular" benefits) to find Mr. Bishop eligible for extended benefits.

DOES filed a Motion for Reconsideration arguing that D.C.Code § 51–107(c)(2) did not apply to extended benefits, and, after further briefing, the ALJ issued an Amended Final Order finding Mr. Bishop ineligible for EUC benefits.[3]

## II.

We review decisions of the OAH to determine whether they are "[a]rbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *DOES*

*v. Vilche,* 934 A.2d 356, 360 (D.C.2007); *see* D.C.Code § 2–510(a)(3)(A) (2001). Based on the record before us, the ALJ's decision was not contrary to law.[4]

The federally funded EUC program at issue here is administered by the states.[5] Section 4001(d)(2) of the law governing EUC addresses eligibility for extended benefits (also known as "emergency" benefits):

> (2) the terms and conditions of the State law which apply to claims for regular compensation and to the payment thereof shall apply to claims for emergency unemployment compensation and the payment thereof, except

> (A) that an individual shall not be eligible for emergency unemployment compensation under this title unless, in the base period with respect to which the individual exhausted all rights to regular compensation under the State law, the individual had 20 weeks of full-time insured employment or the equivalent in insured wages, as determined under the provisions of the State law implementing section 202(a)(5) of the Federal–State

2. D.C.Code § 51–107(c)(2) provides: "If a claimant satisfies the above except that he received wages over the amount necessary to become eligible for maximum benefits, in the quarter in which his wages were the highest, then the additional wages received in such quarter shall not be considered in determining eligibility."

3. Mr. Bishop asserts that the ALJ lacked authority to grant DOES's Motion for Reconsideration because the motion was filed 15 days after the Final Order was served, instead of within the standard 10–day deadline. *See* 1 DCMR § 2828.3. We disagree. As the ALJ noted, OAH rules allow 5 additional days for filing where, as here, a Final Order is served by mail. 1 DCMR § 2812.5. Mr. Bishop contends that the 5–day extension should not have applied in this case because DOES was

served by interagency mail as well as by regular mail. We are satisfied that the ALJ was entitled to interpret the rule literally, so as to treat DOES's motion as timely. *See Tiber Island Cooperative Homes, Inc., v. District of Columbia Zoning Comm'n,* 975 A.2d 186, 190 (D.C.2009) ("This court defers to the interpretation by the agency of its own regulations unless plainly erroneous or inconsistent with the regulations.") (additional quotation marks and citation omitted).

4. DOES filed a timely motion for summary affirmance in response to petitioner's brief. We denied that motion, but granted DOES's alternative request to treat the motion as its brief. D.C.App. R. 27(c).

5. Emergency Unemployment Act of 2008, 26 U.S.C. § 3304.

Extended Unemployment Compensation Act of 1970 (26 U.S.C. 3304 note); . . . .

26 U.S.C. § 3304 note. Section 202(a)(5) of the Federal–State Extended Unemployment Compensation Act of 1970 defines a key term in the statute just quoted:

[T]he equivalent in insured wages shall be earnings covered by the State law for compensation purposes which exceed 40 times the individual's most recent weekly benefit amount or 1½ times the individual's insured wages in that calendar quarter of the base period in which the individual's insured wages were the highest. . . . *The State shall by law provide which one or more of the foregoing methods of measuring employment and earnings shall be used in that State.*

Federal–State Extended Unemployment Act of 1970, P.L. 91–373 (emphasis added).

Mr. Bishop challenges the District of Columbia's statute implementing Section 202(a)(5), which designates the 1½ times test as the sole means of qualifying for EUC benefits in the District. D.C.Code § 51–107(g)(3)(C).[6] He argues that, despite the "one or more" language of the federal statute (emphasized above), 20 weeks of full-time insured employment is "a base measure of equivalency" which must be included in a state's scheme for determining EUC eligibility. We disagree. Section 202(a)(5) authorizes states to select one (or more) of three options for measuring EUC eligibility; it does not mandate that a state select (or include) the 20–week option.[7] As the ALJ concluded, the District's EUC statute is "consistent with program standards established under federal law." [8]

Nor do we agree with Mr. Bishop's argument that the ALJ was required to apply the "setback" provision in D.C.Code § 51–107(c)(2) to his EUC claim. The federal law makes clear that the "the terms and conditions of the State law which apply to claims for regular compensation . . . shall apply" to EUC claims "*except . . . that* an individual shall not be eligible for" extended benefits unless she or he satisfies the eligibility requirements chosen by the state in compliance with federal law. 26 U.S.C. § 3304 note (emphasis added). The 1½ times test set forth in Section 202(a)(5) has no "setback" provision, nor does the District of Columbia statute

6. D.C.Code § 51–107(g)(3)(C) provides: "Notwithstanding any other provisions of this paragraph, an individual shall not be eligible for extended benefits if his monetary eligibility for regular benefits was based upon the total base period wages that did not exceed his highest quarterly wages by at least 1½ times."

7. Our conclusion that Section 202(a)(5) establishes three equally permissible alternatives for determining EUC eligibility is reinforced by guidelines published in the Code of Federal Regulations regarding "Eligibility requirements for Extended Benefits":

The State law shall specify whether an individual qualifies for Extended Benefits by earnings and employment in the base period for the individual's applicable benefit year as required by Section 202(a)(5) of the Act . . . as follows:

(1) One and one-half times the high quarter wages; *or*
(2) Forty times the most recent weekly benefit amount, and if this alternative is adopted, it shall use the weekly benefit amount (including dependents' allowances) payable for a week of total unemployment (before any reduction because of earnings, pensions, or other requirements) which applied to the most recent week of regular benefits; *or*
(3) Twenty weeks of full-time insured employment, and if this alternative is adopted, the term "full time" shall have the meaning provided by the State law.

20 C.F.R. § 615.4(b) (1988) (emphasis added).

8. As a result, we need not decide whether there is support in the record for Mr. Bishop's assertion that he could have satisfied the 20–week requirement.

adopting it. Thus the only way to qualify for extended benefits is to meet the "pure" 1½ test—which Mr. Bishop failed to do. Accordingly, the ALJ's determination that Mr. Bishop was ineligible for benefits was neither arbitrary, nor capricious, nor contrary to law,[9] and the judgment of OAH is hereby

*Affirmed.*

9.  Mr. Bishop alleges that a number of personal misfortunes have befallen him as a result of DOES's mishandling of his claim and asserts that this "should be considered to be a qualified case to request punitive damages." However, the statutes at issue here make no provision for either compensatory or punitive damages. Nor do we see any merit in Mr. Bishop's complaint that OAH's operations are partially funded by contributions from DOES. This funding does not increase if a claim is denied, and we thus do not face a situation where the liberty or property rights of an individual are subject "to the judgment of a court, the judge of which has a direct, personal, substantial pecuniary interest in reaching a conclusion against him in his case." *Tumey v. Ohio*, 273 U.S. 510, 523, 47 S.Ct. 437, 71 L.Ed. 749 (1927).