[No. A133876. First Dist., Div. One. Aug. 22, 2012.]

PATRICK J. McGUIRE, Plaintiff and Appellant, v.
EMPLOYMENT DEVELOPMENT DEPARTMENT et al., Defendants and
Respondents.

1038

**COUNSEL**

Shelley S. Buchanan for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Susan M. Carson and Beverley R. Meyers, Deputy Attorneys General, for Defendants and Respondents.

OPINION

**MARGULIES, J.**—Plaintiff Patrick J. McGuire was awarded regular unemployment compensation benefits, but his claim for extended unemployment benefits, filed when his regular benefits were exhausted, was denied. Defendant Employment Development Department (Department) reasoned that McGuire's earnings during his "base period," although sufficient to qualify him for regular benefits, were insufficient to satisfy the different eligibility test applied for extended benefits.

The "base period" is a one-year period preceding the claimant's unemployment. By statute, the commencement date of the base period is determined from the week for which the claimant first files a claim for benefits. In denying McGuire's claim, the Department and defendant California Unemployment Insurance Appeals Board (Appeals Board) assumed the base period used to determine eligibility for extended benefits was the same base period used to determine regular benefits. The Appeals Board rejected McGuire's argument that an extended benefits base period should be determined from the timing of the extended benefits claim, rather than the timing of the claim for regular benefits.

We affirm the trial court's denial of McGuire's writ petition challenging the Appeals Board's decision, finding his argument incompatible with the statutory scheme of the extended benefits program.

## I. BACKGROUND

In November 2008, McGuire filed a successful claim for unemployment compensation benefits. Pursuant to statute, the amount of his weekly benefit was determined on the basis of his highest quarterly earnings during a one-year period referred to as the "base period," which in turn was determined by the week for which he first filed a claim for benefits. (Unemp. Ins. Code,[1] §§ 1275, subd. (a), 1280, subd. (c).) Because McGuire filed in November 2008, his base period was July 2007 through June 2008. (§§ 1275, subd. (a), 1276.) During those months, McGuire was determined to have earned a total of $11,471.25, all of it in the final quarter. Pursuant to a statutory formula, these peak quarterly earnings entitled him to a weekly unemployment compensation benefit of $442. (§ 1280, subd. (c).)

When his regular benefits expired in February 2009, McGuire filed a claim for extended unemployment compensation benefits, but this claim was denied. The denial was based on section 4552, subdivision (e) (hereafter

---

[1] All further statutory references are to the Unemployment Insurance Code unless otherwise indicated.

subdivision (e)), which governs eligibility for extended benefits. Under subdivision (e), a claimant may receive extended benefits only if, "in the base period in which he or she exhausted all rights to regular compensation," the claimant earned more than 40 times his or her weekly unemployment compensation benefit or 1.5 times his or her earnings during the highest quarter. In denying McGuire's claim, the Department assumed the phrase "the base period in which he or she exhausted all rights to regular compensation" referred to the same base period used to calculate regular benefits. Using this assumption, McGuire's total base period compensation of $11,471.25 constituted only 26 times his weekly benefit of $442. Further, because McGuire earned all of his base period income in a single quarter, his total base period earnings could not have exceeded 1.5 times his earnings in the highest quarter. Accordingly, he failed both of the eligibility tests of subdivision (e).

McGuire appealed the denial to the Appeals Board, contending the phrase "the base period in which he or she exhausted all rights to regular compensation" in subdivision (e) should not be read to refer to his original base period, determined by his regular benefits claim, but instead to a base period determined by the timing of his extended benefits claim.[2] Applying that rule, McGuire's extended benefits base period would have been October 2007 through September 2008. (§§ 1275, subd. (a), 1276.) At the administrative hearing, McGuire introduced evidence of earnings during the period July through September 2008 that were outside the original base period earnings calculation. Including these would have raised his total base period earnings to more than $18,000, thereby satisfying the requirement of base period earnings exceeding 40 times his weekly benefit and qualifying him for extended benefits.

The ALJ affirmed the Department's decision. Without expressly addressing McGuire's argument regarding the base period, the ALJ assumed the base period used in determining extended benefits eligibility was the same base period used for determining the amount of regular benefits. The Appeals Board summarily affirmed the ALJ's decision. McGuire's petition for writ of administrative mandamus in the superior court challenging the Appeals Board's decision was denied.

## II. DISCUSSION

McGuire contends that under subdivision (e), a claimant's base period for purposes of determining eligibility for extended unemployment compensation

---

[2] McGuire actually appealed, withdrew his appeal, reapplied for extended benefits, was denied again, and appealed again. The Appeals Board's administrative law judge (ALJ) treated the second appeal as a request to reinstate his original appeal and granted it. The Attorney General does not raise the possibility of a procedural default as a basis for denying this appeal.

benefits should be calculated from the timing of his or her extended benefits claim, rather than from the date of his or her regular unemployment compensation claim. Had the base period been determined in this manner, he argues, his earnings would have qualified him for extended benefits.

We review the Department's decision for abuse of discretion, which is demonstrated if the Department's decision was not supported by substantial evidence or the Department applied an improper legal standard or otherwise based its determination on an error of law. (*Garamendi v. Golden Eagle Ins. Co.* (2005) 128 Cal.App.4th 452, 466 [27 Cal.Rptr.3d 239].) Because McGuire claims an error of law, our standard of review is de novo. (*Gillis v. Dental Bd. of California* (2012) 206 Cal.App.4th 311, 319 [141 Cal.Rptr.3d 213].)

◼ "California's unemployment insurance program, as promulgated by the Unemployment Insurance Code, is part of a national system of reserves designed to provide insurance for workers 'unemployed through no fault of their own, and to reduce involuntary unemployment and the suffering caused thereby to a minimum.' [Citation.] . . . [¶] In order to receive benefits, an unemployment insurance claimant applies to the [Department], . . . which investigates the claim and makes an initial eligibility determination in a nonadversarial setting. [Citations.] The applicant for unemployment insurance benefits has the burden of establishing eligibility . . . ." (*American Federation of Labor v. Unemployment Ins. Appeals Bd.* (1996) 13 Cal.4th 1017, 1024 [56 Cal.Rptr.2d 109, 920 P.2d 1314].)

◼ As discussed above, the amount of a claimant's weekly regular unemployment compensation benefit is determined by "wages paid in the base period." (§ 1275, subd. (a).) Section 1275 defines the "base period" by reference to a claimant's "benefit year," which is defined as "the 52-week period beginning with the first day of the week with respect to which the individual first files a valid claim for benefits." (§ 1276.) For benefit years "beginning in October, November, or December," the base period is normally "the four calendar quarters ended in the next preceding month of June." (§ 1275, subd. (a).)[3] Because McGuire's claim for regular benefits began on

---

[3] The relevant portion of section 1275 states: "Unemployment compensation benefit award computations shall be based on wages paid in the base period. 'Base period' means: for benefit years beginning in October, November, or December, the four calendar quarters ended in the next preceding month of June; for benefit years beginning in January, February, or March, the four calendar quarters ended in the next preceding month of September; for benefit years beginning in April, May, or June, the four calendar quarters ended in the next preceding month of December; for benefit years beginning in July, August, or September, the four calendar quarters ended with the next preceding month of March." Subdivision (b) of section 1275 contains an alternate method of determining the base period for persons who fail to qualify under subdivision (a).

November 16, 2008, his base period was the one-year period ending June 2008. (§ 1275, subd. (a).) In all cases under section 1275, subdivision (a), a claimant's base period ends a minimum of three months and a maximum of six months before the commencement of his or her claim for regular benefits.

Once a claimant's base period is determined, the amount of his or her weekly unemployment compensation benefit is calculated from a table or formula in section 1280, based on wages earned "during the quarter of his or her base period in which his or her wages were the highest." (§ 1280, subd. (c).) In general, the higher the claimant's wages during that quarter, the greater his or her unemployment compensation benefit, up to a statutory maximum. (§§ 1280, subd. (c), 1281, subd. (b).)

█ *Extended* unemployment compensation benefits are paid under a joint federal-state program established by the " 'Federal-State Extended Unemployment Compensation Act of 1970,' as amended by the Omnibus Budget Reconciliation Act of 1981 (Public Law 97-35)" (Federal Act) (26 U.S.C. § 3304 note (Pub.L. No. 97-35, § 202(a) (Aug. 13, 1981) 95 Stat. 357) and implemented through division 1, part 4 of the Unemployment Insurance Code.[4] (Unemp. Ins. Code, § 4001.) The program, which only operates when the state unemployment rate reaches certain high levels, provides additional weeks of benefits to "individuals who have exhausted all rights to regular [unemployment] compensation." (§ 4001; see *American Federation, etc. v. Marshall* (D.D.C. 1980) 494 F.Supp. 971, 972.) Under section 4001, "[e]xcept where inconsistent with the provisions of the [Federal Act], the terms and conditions of this division which apply to claims for regular compensation and to the payment thereof shall apply to claims for extended compensation and to the payment thereof under such federal act."[5]

Eligibility for extended benefits is governed by section 4552. In addition to requiring that a claimant qualify for regular benefits (*id.*, subd. (c)), subdivision (e) contains the requirement that prevented McGuire from receiving extended benefits: "An unemployed individual is eligible to receive federal-state extended benefits with respect to any week only if the director finds that: [¶] . . . [¶] (e) With respect to compensation payable to any individual for any week, he or she had earnings from employment subject to

---

[4] The Federal Act is not codified in the United States Code, but its text is printed as a note following section 3304 of title 26 of the United States Code.

[5] The status of the code sections governing regular benefits is further addressed in section 4002, subdivision (a), which states: "Except as otherwise provided, the provisions and definitions of Part 1 (commencing with Section 100) apply to this part. In case of any conflict between the provisions of Part 1 and the provisions of this part, the provisions of this part shall prevail with respect to federal-state extended benefits."

the provisions of this division which exceed 40 times his or her most recent weekly benefit amount or 1.5 times the highest quarter, in the base period in which he or she exhausted all rights to regular compensation." (§ 4552, subd. (e).)

■ With that legal background, we reach McGuire's argument regarding the base period to be applied under subdivision (e). In interpreting the statute, " 'it is well settled that we must look first to the words of the statute, "because they generally provide the most reliable indicator of legislative intent." [Citation.] If the statutory language is clear and unambiguous our inquiry ends. "If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs." ' " (*Pineda v. Bank of America, N.A.* (2010) 50 Cal.4th 1389, 1394 [117 Cal.Rptr.3d 377, 241 P.3d 870].) "If the language is susceptible of multiple interpretations, 'the court looks "to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." [Citation.] After considering these extrinsic aids, we "must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." ' " (*Lopez v. Superior Court* (2010) 50 Cal.4th 1055, 1063 [116 Cal.Rptr.3d 530, 239 P.3d 1228].)

While recognizing our interpretive obligation to begin with the plain language of the statute, we spend little time there. Both proposed constructions are consistent with the definitional language of "base period" found in sections 1275 and 1276. The Department proposes to adopt precisely the base period used in calculating regular benefits. McGuire, in contrast, argues the term "valid claim for benefits" in section 1276, which defines a "benefit year," should be interpreted to refer to a claim for extended benefits when applied in the context of an application for extended benefits. This would result in the determination of the base period, which is dated from the beginning of a benefit year, on the basis of the timing of the claim for extended benefits. Because the term "claim" is not otherwise defined in the code, this interpretation does not contradict the plain language of these statutes.

■ The analysis does not end there, because the statute governing eligibility for extended benefits does not refer merely to the "base period." Instead, it bases eligibility for extended benefits on earnings "in the base

period *in which he or she exhausted all rights to regular compensation.*"
(§ 4552, subd. (e), italics added.) Unfortunately, the meaning of the italicized
language is unclear. Rights to benefits can be "exhausted" because, under
section 1275, subdivision (a), "[w]ages used in the determination of benefits
payable to an individual during any benefit year may not be used in
determining that individual's benefits in any subsequent benefit year." Ac-
cordingly, once a claimant has received regular benefits based on the wages
earned in a base period, he or she cannot later receive additional benefits
based on those same wages. The words "in which," when applied to a period
of time, such as the base period, are normally synonymous with "during."
Subdivision (e)'s reference to a base period "in which" the individual
exhausted the right to benefits therefore appears to equate with a base period
"during which" the right to benefits was exhausted. Because a claimant
ordinarily "exhaust[s] all rights to regular compensation" by receiving the
benefits, the plain language of subdivision (e) would seem to require the base
period to include the time period during which the individual was receiving
regular unemployment compensation benefits.

Such a definition, however, is in irreconcilable conflict with the definition
of "base period" contained in sections 1275 and 1276. Under those provi-
sions, the base period is a 12-month period ending no less than three months,
and as many as six months, prior to the submission of a claim. Because a
claim for extended benefits commences at the termination of a claimant's
receipt of regular benefits, a base period determined on the basis of sections
1275 and 1276 will necessarily exclude a minimum of three months, and as
much as six months, of the time during which the claimant was receiving
regular benefits. Accordingly, there is no base period consistent with sections
1275 and 1276 that includes the entire period of time "in which [the
claimant] exhausted all rights to regular compensation." (§ 4552, subd. (e).)
Because neither party's proposed interpretation resolves this apparent incon-
sistency, we cannot settle the dispute solely on the basis of the statutory
language.

When the plain language of the statute provides no ready resolution to an
interpretive challenge, we look to various aids beyond the bare meaning of
the words, such as " ' "the ostensible objects to be achieved, the evils to be
remedied, the legislative history, public policy, contemporaneous administra-
tive construction, and the statutory scheme of which the statute is a part." ' "
(*Lopez v. Superior Court, supra*, 50 Cal.4th at p. 1063.) Here we need to go
no further than the larger statutory scheme to resolve the conundrum.

■ As discussed above, extended benefits are a federal-state program organized and implemented under the terms of the Federal Act. Significantly, the Federal Act contains language similar, but not identical, to the troublesome language from subdivision (e). This language is found in section 202(a) of the Federal Act, entitled "State Law Requirements," which sets out the various provisions of law required of a state for participation in the extended benefits program. Section 202(a)(5), which establishes eligibility requirements for the receipt of extended benefits, requires a claimant to have had, "in the base period with respect to which the individual exhausted all rights to regular compensation under the State law," either 20 weeks of full-time employment, or wages exceeding 40 times the individual's weekly regular benefit, or 1.5 times the earnings of the individual's highest earning quarter. Section 202(a)(5) requires the states to adopt "one or more" of these three alternative eligibility requirements. (26 U.S.C. § 3304 note (Federal Act, *supra*, Pub.L. No. 97-35, § 202(a)(5), 95 Stat. 357).)

Subparagraph (a)(5) was added to section 202 of the Federal Act in 1981 by Public Law No. 97-35, title XXIV (Aug. 13, 1981) 95 Statute 357, section 2404(a), which is mentioned in Unemployment Insurance Code section 4001. The amendment was made effective for weeks beginning after September 25, 1982. (Pub.L. No. 97-35, *supra*, 95 Stat. 357, § 2404(c).) Subdivision (e) was added to section 4552 of the Unemployment Insurance Code in legislation approved by the Governor on September 14, 1982. (Stats. 1982, ch. 1072, § 8, p. 3861.) Given the timing, there is little doubt subdivision (e) was enacted by the Legislature to bring California's extended benefits statute into compliance with new section 202(a)(5) of the Federal Act. Consistent with the requirements of section 202(a)(5), subdivision (e) contains, in the alternative, two of the three eligibility requirements allowed by the new federal section— the requirements of base period earnings 40 times greater than the weekly regular benefit or 1.5 times the earnings during the quarter having the highest earnings. The failure to adopt such an eligibility requirement would have put at risk California's participation in the extended benefits program.[6] (26 U.S.C. § 3304 note (Federal Act, *supra*, Pub.L. No. 97-35, § 202(a)(5), 95 Stat. 357); see, e.g., *Morris v. Williams* (1967) 67 Cal.2d 733, 738 [63 Cal.Rptr. 689, 433 P.2d 697] [discussing a Medi-Cal statute enacted "to qualify California for the receipt of federal funds made available" under federal Medicaid law].)

The only discrepancy between the language of Unemployment Insurance Code section 4552, subdivision (e) and section 202(a)(5) of the Federal Act is

---

[6] In addition to the statutory requirement itself, the federal regulations implementing Federal Act section 202(a)(5) make clear that, in order to receive federal payments, a state must adopt one or more of the three standards for eligibility. (20 C.F.R. § 615.4(b) (2012); see *Bishop v. Dist. of Columbia Dept. of Employment Services* (D.C. 2011) 24 A.3d 660, 662.)

the language of interest here, their respective definitions of the base period during which the qualifying wages were earned. Section 202(a)(5) describes it as "the base period *with respect to* which the individual exhausted all rights to regular compensation under the State law." (Italics added.) Subdivision (e) describes it as "the base period *in* which he or she exhausted all rights to regular compensation." (Italics added.) The italicized difference is significant.[7] As discussed, the base period for regular benefits is used to determine eligibility for and amount of those benefits. As a result, when a claimant exhausts his or her "rights" to regular benefits, the rights would be determined from, and exhausted "with respect to," that base period. By requiring the qualifying wages to be earned in the base period "with respect to which" the claimant exhausted his or her rights to regular benefits, the language of the Federal Act is clearly referring to the original base period used for determining regular benefits.[8] Unlike California's different version, there is no ambiguity in the federal language.

For one very compelling reason, we must conclude the Legislature intended the language in subdivision (e) to have a meaning identical to the Federal Act's designation of a base period "with respect to which" the claimant exhausted his or her rights to regular benefits, in spite of the difference in language. The Federal Act requires a state to adopt the provisions of section 202(a)(5) to qualify for federal funding. If we were to assign to subdivision (e) a definition different from the federal definition, as McGuire urges, it would put at risk the state's participation in the federal-state extended benefits program. Continued participation in the program, however, was presumably the primary, if not the only motivation of the Legislature in enacting section 4552, subdivision (e). This intent is forcefully demonstrated by the Legislature's adoption of subdivision (e) in response to and within the timeframe required by the addition of section 202(a)(5) to the Federal Act.

The legislative history of Assembly Bill No. 2856 (1981–1982 Reg. Sess.) (see Stats. 1982, ch. 1072, § 8, p. 3861), the act that added subdivision (e) to section 4552, confirms this intent. In memoranda describing Assembly Bill No. 2856, the author referred to the bill by the title, "UNEMPLOYMENT

---

[7] We can find no plausible explanation for the discrepancy. There does not appear to be any particular policy advantage in California's version of the language. As noted, its meaning cannot be determined with certainty or easily squared with the remaining provisions of the Unemployment Insurance Code.

[8] McGuire does not suggest any other interpretation of the federal language. On the contrary, while McGuire's brief cites the Federal Act, it ignores the difference in language between the federal and state provisions.

INSURANCE—FEDERAL CONFORMITY." A document entitled "LEGIS-LATIVE PROPOSAL," apparently prepared by the Department, which sponsored the bill, describes the purpose of Assembly Bill No. 2856 as follows: "The Omnibus Budget Reconciliation Act of 1982 [*sic*: 1981] (PL 97-35) requires California to change its law in regard to three aspects of the Unemployment Insurance (UI) program: [¶] . . . [¶] (3) Eligibility standards for [federal-state extended] benefits are tightened. [¶] If California does not ·change its law by October 31, 1982, to conform to the Federal requirements, the Secretary of Labor could find the State law out of conformity with Federal law and penalize the State by withdrawing over $250 million in Federal grants that fund the Employment Development Department's entire Job Service and UI administration. In addition, the Secretary could rescind a Federal Unemployment Tax credit worth more than $1.5 billion annually to California employers." (Employment Development Dept., Legis. Proposal, EDD 82-3, Assem. Bill No. 2856 (1981–1982 Reg. Sess.) at p. 2.) The intent to adopt the requirements of federal law could not be more clear.[9]

McGuire argues his interpretation is preferable because it would place the base period closer to the time at which extended benefits are sought. While this approach is certainly a plausible one, the language of the Federal Act demonstrates conclusively it is not the approach adopted by Congress. As discussed above, there is no question the Legislature intended to follow Congress, thereby preserving the state's access to federal funding. As a result, we are precluded from second-guessing the appropriateness of the chosen base period. We note, however, that maintaining the same base period has a distinct administrative advantage, since under the federal definition administrators need not collect additional wage information with respect to a claimant to determine his or her eligibility for extended benefits. McGuire's definition, in contrast, would require updated wage information with respect to each applicant, introducing a new administrative burden and potentially slowing the decisionmaking process.

■    For the foregoing reasons, we agree with the Department that the base period to be used for determining an individual's eligibility for federal-state extended unemployment compensation benefits under section 4552, subdivision (e) is the same base period used for determining regular unemployment compensation benefits.

---

[9] Although various documents prepared during deliberations over Assembly Bill No. 2856 (1981–1982 Reg. Sess.) describe the "base period" envisioned by the bill as a "12-month 'base period' " (e.g., Legis. Analyst, analysis of Assem. Bill No. 2856 (1981–1982 Reg. Sess.) p. 2), they do not otherwise shed light on the intended base period. Nor do the documents explain the discrepancy in language between federal and state enactments, which was present from the first version of the bill introduced. (See Assem. Bill No. 2856 (1981–1982 Reg. Sess.) as introduced Mar. 1, 1982.)

## III.   DISPOSITION

The judgment of the trial court is affirmed.

Marchiano, P. J., and Dondero, J., concurred.