Filed 4/20/26  Vanderford v. Cal. Unemployment Ins. Appeals Bd. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| KENNETH W.E. VANDERFORD, Plaintiff and Appellant, v. CALIFORNIA UNEMPLOYMENT INSURANCE APPEALS BOARD et al., Defendants and Respondents. | D084735 (Super. Ct. No. 37-2022-00050638-CU-WM-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Matthew C. Braner, Judge.  Affirmed.

Kenneth W.E. Vanderford, in pro. per., for Plaintiff and Appellant.

Rob Bonta, Attorney General, Cheryl L. Feiner, Assistant Attorney General, Maureen C. Onyeagbako and Darin L. Wessel, Deputy Attorneys General, for Defendants and Respondents.

I

INTRODUCTION

Appellant Kenneth W.E. Vanderford filed a petition for writ of traditional mandate (Code Civ. Proc., § 1085) and writ of administrative

mandamus (*id.*, § 1094.5) in the superior court, challenging the denial of his application for federal-state extended duration (Fed-ED) benefits by the California Unemployment Insurance Appeals Board (the Board) and Nancy Farias, in her official capacity as Director of the Employment Development Department (EDD) (together with the Board, Respondents).  The court denied relief and entered judgment for Respondents on grounds that Vanderford's writ petition was both untimely and without merit.  We agree the writ petition was untimely and affirm the judgment on that basis, without addressing the writ petition on its merits.

## II

## BACKGROUND[1]

A. *Legal Framework*

"California's unemployment insurance program, as promulgated by the Unemployment Insurance Code, is part of a national system of reserves designed to provide insurance for workers 'unemployed through no fault of their own, and to reduce involuntary unemployment and the suffering caused thereby to a minimum.' " (*American Federation of Labor v. Unemployment*

---

[1]     On appeal, Vanderford filed a motion to augment the appellate record with certain of his legal filings from the appeal, including: (1) the motion to augment the record; (2) a legal brief in support of the motion to augment the record; (3) a second amended notice designating the record on appeal; and (4) a proof of electronic service.  While appellate briefing was ongoing, we deferred consideration of the motion.  We now deny the motion on the basis that the trial court was never presented with the appellate court filings for which augmentation is sought.  (See *Vons Companies, Inc. v. Seabest, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 ["Augmentation does not function to supplement the record with materials not before the trial court."]; *In re K.M.* (2015) 242 Cal.App.4th 450, 456 ["The augmentation procedure cannot be used to bring up matters occurring during the pendency of the appeal because those matters are outside the superior court record."].)

2

*Ins. Appeals Bd.* (1996) 13 Cal.4th 1017, 1024 (*American Federation*).)[2] "In order to receive [regular unemployment insurance] benefits, an unemployment insurance claimant applies to the EDD, a branch of the Health [and Human Services] Agency, which investigates the claim and makes an initial eligibility determination in a nonadversarial setting." (*Ibid.*) If a claimant qualifies for benefits, the weekly benefits are calculated as a percentage of the highest amount of wages the claimant earned in a single calendar quarter during the claimant's base period. (§§ 1275, 1280, subd. (c).)[3]

If a claimant exhausts his or her regular benefits, the claimant may be entitled to Fed-ED benefits if he or she meets certain qualifications and the state is in an extended benefit period. (§§ 4001, 4552.) The Fed-ED program "only operates when the state unemployment rate reaches certain high levels," and it "provides additional weeks of benefits to 'individuals who have exhausted all rights to regular [unemployment] compensation.' " (*McGuire, supra*, 208 Cal.App.4th at p. 1042.) Section 4552 governs a claimant's eligibility for Fed-ED benefits. Under section 4552, a claimant is eligible for Fed-ED benefits only if his or her total base period earnings are more than 40 times the amount of the claimant's regular weekly benefits, or 1.5 times the amount of the highest quarter from the base period. (§ 4552, subd. (e).)

If a claimant is denied unemployment insurance benefits, including Fed-ED benefits, the claimant may file an administrative appeal, which is

---

[2]     Undesignated statutory references are to the Unemployment Insurance Code.

[3]     The base period "is a one-year period preceding the claimant's unemployment." (*McGuire v. Employment Development Dept.* (2012) 208 Cal.App.4th 1035, 1039 (*McGuire*).)

heard by an administrative law judge. (§§ 1328, 1334; *American Federation, supra,* 13 Cal.4th at p. 1024.) If the claimant receives an adverse decision from the administrative law judge, the claimant may appeal to the Board. (§ 1336.)

B. *Vanderford's Request for Regular Benefits*

On November 16, 2020, Vanderford filed for regular unemployment benefits after losing his employment with Goodwill Industries of San Diego County (Goodwill) and the Census Bureau. He reported $7.13 in wages from Goodwill and $0 in wages from the Census Bureau. Based on these figures, EDD determined Vanderford was not entitled to regular benefits. However, it redetermined Vanderford's claim after the Census Bureau reported Vanderford's wages. After the redetermination, EDD found Vanderford was entitled to regular benefits of $79 per week.

Vanderford appealed from the original determination that he was not entitled to regular benefits, apparently unaware EDD had redetermined his claim. The administrative law judge dismissed the administrative appeal as moot based on EDD's redetermination. Vanderford filed an untimely request to reopen the dismissal of his appeal, but the administrative law judge denied the application and noted both that it was untimely and Vanderford had already obtained a decision in his favor.

C. *Vanderford's Request for Fed-ED Benefits*

In September 2021, after Vanderford exhausted his regular benefits, he sought Fed-ED benefits. EDD denied Vanderford's request and found him ineligible for Fed-ED benefits on the basis that his base period earnings did not exceed 40 times the amount of his regular weekly benefits or 1.5 times the amount of the highest quarter in the base period. Specifically, EDD's records showed Vanderford had $2,049.63 in wages during his base period

4

($2,042.50 from the Census Bureau and $7.13 from Goodwill), which did not exceed 40 times his regular weekly benefit (40 times $79, or $3,160) or 1.5 times the amount of the highest quarter in the base period (1.5 times $2,042.50, or $3,063.75).

Vanderford administratively appealed the denial of his request for Fed-ED benefits, arguing EDD erroneously failed to include in his eligibility calculation a $13,416 worker's compensation settlement with Goodwill. He also contested EDD's inclusion of $7.13 in wages reported by Goodwill when it calculated his eligibility for benefits.

At the administrative hearing, Vanderford testified he worked for Goodwill from 2017 through 2018, and suffered a workplace injury while working there. He filed a worker's compensation case against Goodwill, which settled in 2019. As a result of the settlement, Goodwill changed Vanderford's employment status to a voluntary termination, effective August 28, 2019. Goodwill issued him a final paycheck of $7.13, which represented his accrued vacation pay. As part of the settlement, Goodwill also agreed to pay—and EDD agreed to accept—$3,400 as full and final satisfaction of EDD's $13,416 disability benefits lien against the worker's compensation case. Vanderford argued the full $13,416 should have been included as wages in the base period when EDD calculated his benefits eligibility. The administrative law judge rejected this argument and affirmed EDD's determination that Vanderford was ineligible for Fed-ED benefits.

Vanderford appealed to the Board, which affirmed the administrative law judge's determination on June 16, 2022. In its decision, the Board adopted the issue statement, factual findings, and conclusions of law rendered by the administrative law judge, with one immaterial correction. The Board also notified Vanderford its decision was final, he could challenge

5

the decision only by filing a petition for writ of mandate against the Board in the superior court, and he must file any such writ petition not later than six months after the Board's decision—i.e., on or before December 16, 2022.

D. *Writ Proceedings*

On December 19, 2022, Vanderford filed a pro se petition for writ of traditional mandate and administrative mandamus in the trial court, naming the Board and EDD Director Farias as Respondents, and Goodwill and Goodwill's agent, CorVel Corp. (CorVel), as Real Parties in Interest.

Respondents answered the writ petition. Meanwhile, CorVel demurred on the ground that Goodwill did not employ him during the timeframe relevant to his Fed-ED benefits claim. The trial court sustained the demurrer without leave to amend.[4]

Vanderford filed an opening brief arguing: (1) the writ petition should be considered timely under equitable tolling principles because he mistakenly believed "mailing grace periods" would extend the applicable six-month deadline to seek judicial review; (2) Respondents erroneously included $7.13 in vacation wages from Goodwill in his regular benefits calculation, and denied him due process by dismissing his administrative appeal from the original benefits determination; and (3) some portion of his worker's compensation settlement should have been included in his Fed-ED benefits calculation.

Respondents filed an opposition brief contending: (1) Vanderford's writ petition was untimely because he filed it after the applicable six-month filing deadline governing challenges to Board decisions; (2) the dismissal of Vanderford's original administrative appeal was proper; (3) EDD properly

---

[4] It is unclear from the parties' appellate briefs and the record before us whether and how Goodwill responded to the writ petition.

included the $7.13 in vacation wages in its calculation and, even if it was error, the error benefitted Vanderford by bringing his base period wages closer to surpassing the wage cap of $3,160; (4) under sections 931 and 933, Vanderford's worker's compensation settlement was properly excluded from his benefits calculation; and (5) even if Vanderford was eligible for Fed-ED benefits, he was not entitled to benefits because the federal government ended the Fed-ED period for California in September 2021 (the same month he applied for Fed-ED benefits).[5]

Vanderford filed a reply arguing for the first time that he had tried to cancel his initial application for regular benefits, EDD did not respond to his cancellation request, and EDD therefore "proceeded without, or in excess of[,] jurisdiction[.]" He also argued the administrative law judge exhibited "bias," held a "pretextual" hearing, and engaged in "extrinsic fraud" when denying his administrative appeal.

After a hearing, the court denied Vanderford's writ petition. The court found the writ petition was untimely, as it was filed more than six months after the Board's decision affirming the denial of his request for Fed-ED benefits. The court also denied the writ petition on the merits. It found EDD correctly included the $7.13 in its wage calculation and, even if EDD erred,

---

[5]    Section 931, subdivision (a), provides, " 'Wages' does not include the amount of any payment … made to or on behalf of an employee … under a plan or system established by an employer which makes provision for his or her employees generally, … on account of any of the following: [¶] … Sickness or accident disability."

Section 933 states, " 'Wages' does not include any payment on account of sickness or accident disability, or medical or hospitalization expenses in connection with sickness or accident disability made by an employer to, or on behalf of, an employee after the expiration of six calendar months following the last calendar month in which the employee worked for such employer."

Vanderford was not prejudiced because he fell far short of satisfying the wage cap set forth in section 4552. The court also found EDD properly excluded the worker's compensation settlement from the wage calculation, and Vanderford "did not address this issue in his briefing." Thereafter, the court entered judgment for Respondents.

III

DISCUSSION

Proceeding in propria persona, Vanderford challenges the denial of his writ petition. As best we can discern, he claims: (1) Respondents exhibited "bias" and engaged in "extrinsic fraud" during the administrative proceedings concerning his benefits applications, which deprived him of a fair trial and violated his due process rights; (2) the trial court "ignore[d]" his opposition to CorVel's demurrer; (3) EDD erred in its computation of his regular benefits by including his vacation pay and excluding his workers' compensation settlement; and (4) the Board improperly failed to produce documents responsive to a California Public Records Act request relating to his application for Fed-ED benefits.

" 'To prevail on appeal, an appellant must establish both error and prejudice from that error. [Citation.] In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record. Rather than scour the record unguided, we may decide that the appellant has forfeited a point urged on appeal when it is not supported by accurate citations to the record. [Citations.] Similarly, we may disregard conclusory arguments that are not supported by pertinent legal authority.' " (*Champir, LLC v. Fairbanks Ranch Assn.* (2021) 66 Cal.App.5th 583, 597 (*Champir*); see *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 146 (*United Grand*) [" 'an

8

appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record' "].)

These principles of appellate practice apply to Vanderford, even though he is proceeding with this appeal as a self-represented litigant. " '[S]uch a party is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys.' " (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247.) "In other words, when a litigant accepts the risks of proceeding without counsel, he or she is stuck with the outcome, and has no greater opportunity to cast off an unfavorable judgment than he or she would if represented by counsel." (*Burnete v. La Casa Dana Apartments* (2007) 148 Cal.App.4th 1262, 1267.)

As noted, the court denied Vanderford's writ petition on the basis that it was untimely. Section 410 sets forth a six-month deadline for a party to seek judicial review of a Board decision. It states, "Notwithstanding any other provision of law, the right of the director, or of any other party … to seek judicial review from an appeals board decision shall be exercised not later than six months after the date of the decision of the appeals board or the date on which the decision is designated as a precedent decision, whichever is later." (§ 410.) Here, the Board affirmed the denial of Vanderford's request for Fed-ED benefits on June 16, 2022, and in its decision notified him that he had six months to seek judicial review of the decision. Under section 410, the deadline to seek review was December 16, 2022. However, Vanderford did not file his writ petition until December 19, 2022. Therefore, the court properly denied the writ petition as untimely.

In his appellate briefs, Vanderford discusses the issue of timeliness only briefly. He asks us to make "an equitable estoppel ruling" and an "equitable tolling ruling" because he "did not discover" that he would "not

9

[receive] a[] mailing grace period" until after the filing deadline had already passed. However, Vanderford does not cite any portion of the appellate record to support his bare assertion that he was unaware of the correct deadline to seek judicial review of the Board's decision. On this basis alone, we must reject Vanderford's argument. (*Champir, supra*, 66 Cal.App.5th at p. 597; *United Grand, supra*, 36 Cal.App.5th at p. 146.)

Vanderford also does not present a cogent analysis of why Respondents should be estopped from asserting a timeliness defense, or why section 410's six-month deadline should be tolled. The equitable estoppel doctrine " ' "provides that a person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his detriment. The elements of the doctrine are that (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." ' " (*Alameda County Deputy Sheriff's Assn. v. Alameda County Employees' Retirement Assn.* (2020) 9 Cal.5th 1032, 1072.)

Meanwhile, the equitable tolling doctrine "allows our courts, 'in carefully considered situations' [citation], to exercise their inherent equitable powers to 'soften the harsh impact of technical rules' [citation] by tolling statutes of limitations. … [E]quitable tolling today applies when three 'elements' are present: '[(1)] timely notice, and [(2)] lack of prejudice, to the defendant, and [(3)] reasonable and good faith conduct on the part of the plaintiff.' [Citation.] These requirements are designed to 'balanc[e] … the injustice to the plaintiff occasioned by the bar of his claim against the effect upon the important public interest or policy expressed by the [operative]

10

limitations statute.' " (*Saint Francis Memorial Hospital v. State Dept. of Public Health* (2020) 9 Cal.5th 710, 724–725.)

Vanderford's appellate briefs do not articulate either of these legal tests, nor do they explain in substantive terms why Vanderford believes he has satisfied the elements of the tests in the present case. His appellate briefs also provide no legal authority supporting the application of either doctrine in circumstances like the present one, where a party's own mistake or neglect, standing alone, is the only claimed reason that the party has failed to comply with a filing deadline. Because Vanderford does not provide a cogent analysis warranting application of either doctrine, we must affirm the denial of his writ petition based on timeliness.[6] (*Champir, supra*, 66 Cal.App.5th at p. 597; *United Grand, supra*, 36 Cal.App.5th at p. 146.)

IV

DISPOSITION

The judgment is affirmed. Parties shall bear their costs on appeal.

McCONNELL, P. J.

WE CONCUR:

CASTILLO, J.

RUBIN, J.

---

[6] Given our affirmance on timeliness grounds, it is unnecessary for us to determine whether the court properly denied the writ petition on the merits. (See *Conte v. Wyeth, Inc.* (2008) 168 Cal.App.4th 89, 114 ["As a general rule, we will not resolve an issue that is unnecessary to disposition of an appeal"].)

11